Douthitt v. Applegate.

ELIZABETH H. DOUTHITT V. WILLIAM APPLEGATE.

| 33 | 395 |
|----|-----|
| 40 | 755 |
| 33 | 395 |
| 66 | 797 |

| 33 | 395 |
|----|-----|
| 182 | 781 |

1. MARRIAGE; *Fraudulent Promise; Cause of Action Stated.* Where the petition alleges, among other things, that the defendant, a woman fraudulently and by false professions of love and affection and false pretenses of wealth, and by a promise to marry the plaintiff, a man, and by pretending that it was necessary to stop the opposition of her children to their marriage, induced the plaintiff to convey his land to her, when in fact she never had any intention of marrying him or of fulfilling any of her promises, *held,* that the petition states a cause of action for setting aside the deed of conveyance.

2. ———— And this although it was the agreement of the parties that after their marriage the land should be conveyed to another person.

3. ———— And in such a case, where the negotiations between the parties were commenced while the plaintiff was a married man, but afterward he obtained a divorce, and the negotiations were continued, and the deed of conveyance was executed afterward, *held,* that the plaintiff may maintain the aforesaid action, although it may be considered that the negotiations prior to his divorce were against public policy and good morals.

4. EVIDENCE; *Objection, too Late.* And in such a case, where there were no allegations in the pleadings that the plaintiff had at one time been

a married man, and was afterward divorced, but such facts appeared for the first time upon the trial and by the evidence introduced, and the fact of the divorce was proved without objection by parol testimony, and no objection was made during the trial to such testimony, *held*, that such objection cannot afterward be made.

5. ———— While inadequacy of price is never alone sufficient to establish fraud, yet it may often be shown along with other evidence as tending to show fraud.

6. DEED; *Consideration; Evidence.* Where the question as to whether a money consideration was paid for a deed, or not, is presented for consideration to the trial court, the business transactions and financial condition of the parties about the time when the deed was executed, and when it is claimed the consideration was paid, may sometimes be shown as tending to show whether it was probable that a money consideration for the deed was paid, or not.

*Error from Linn District Court.*

ACTION brought by *William Applegate* against *Elizabeth H. Douthitt*, to set aside a certain deed of conveyance, and to quiet his title to certain real estate. The case was tried before the court without a jury, and on the trial the court made findings of fact and conclusions of law as follows:

### FINDINGS OF FACT.

"1. That in the spring of 1881, and for several years prior thereto, plaintiff owned and was living with his wife and family upon the land in Linn county, Kansas, described as follows, to wit: Lots one, two, seven, and eight, in the southwest quarter of section 14, township 23, range 25, containing 160 acres, and of the value of four thousand dollars.

"2. That in the spring of 1881 the defendant was an unmarried woman, living upon a farm some four miles from plaintiff, in Bourbon county, Kansas.

"3. That at said time plaintiff was the owner and had upon his farm some 10 head of cattle, some 7 head of horses, some 30 head of hogs, about 1,000 bushels of old corn, and other personal property, and raised a crop of corn in the year 1881.

"4. That plaintiff is a man fifty-four years of age, of ordinary good sense.

"5. That defendant is a woman forty-six years of age, of prepossessing appearance and more than ordinary shrewdness.

"6. That defendant knew that plaintiff was a married man.

"7. That, for the sole and only purpose of obtaining plain-

tiff's property, defendant induced and enticed plaintiff to visit her at her house, and there by female arts, false professions of love and affection, false statements of her property and finan-cial prospects, and fraudulent promise of marriage, so infatuated the plaintiff that from time to time during the years of 1881 and 1882 she caused plaintiff to convert his personal property into money, (to the amount of over one thousand dollars,) and pay it to her, and also caused plaintiff to convey to her the land above described, which was all the property, except a small amount of personal property, which plaintiff had.

"8. That plaintiff conveyed said land to defendant, August 14, 1882, by warranty deed, which, with the knowledge of plaintiff, was duly recorded.

"9. That the moving cause of said conveyance was a fraud-ulent promise of marriage made by defendant to plaintiff.

"10. That there was no other consideration for said con-veyance.

"11. That said defendant fraudulently promised plaintiff to convey said land to one Fannie C. Shoe, as soon as said plaintiff and defendant should be married.

"12. That plaintiff has never requested defendant to deed said land to said Fannie C. Shoe.

"13. That said plaintiff was divorced from his wife, August 2, 1882, and from that time until January, 1883, made his home at the house of the defendant, under the belief and fraudulent promise of defendant that she would marry him.

"14. That defendant had no intention at any time, of marrying plaintiff.

"15. That defendant had no intention to convey said land to said Fannie C. Shoe.

"16. That the only object of defendant was to obtain plain-tiff's property and then drive him away.

"17. That defendant paid as interest and taxes on said land $75.51, which plaintiff should repay to her."

CONCLUSIONS OF LAW.

"1. That said deed is void and of no effect.

"2. That plaintiff is the owner in fee of said land.

"3. That defendant, or any person claiming under her or through her, be restrained from setting up any claim of right in and to said premises."

Judgment accordingly for the plaintiff, at the December Term, 1883. The defendant brings the case to this court.

*S. H. Allen,* and *J. H. Sallee,* for plaintiff in error.

*W. R. Biddle,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Linn county, by William Applegate against Elizabeth H. Douthitt, to set aside a deed of conveyance, and to quiet his title to certain real estate. The deed was executed for the land in controversy by the plaintiff to the defendant on August 14, 1882, and the plaintiff alleges in his petition that it was procured by the defendant through fraud. The facts constituting the alleged fraud are in substance and in brief as follows: The defendant, being a designing and crafty woman, induced the plaintiff, by ardent professions of love and affection, to visit her at her home in Bourbon county. He became very much enamored of her, and visited her frequently. She, designing to defraud him of his property, falsely represented that she was wealthy, falsely professed great love and affection for him, and promised to marry him. She asked him to deed his property to her in order to stop the opposition, as she stated, of her children to their marriage, and promised to deed the land to Fannie C. Shoe, when they were married, and that he should not be poorer for the same, but should be richer. The plaintiff believed that she was sincere in all her professions of love and affection, and in all her promises, and relied upon the same, and he deeded the land to her for no other consideration; but in fact she was not sincere, and never had any intention of marrying him or of performing any of her promises, and afterward refused to marry him and to perform her other promises. He also had much personal property, which he disposed of, and then gave her the proceeds.

The defendant answered to this petition, denying all the allegations of the plaintiff's petition charging fraud against her, and set up that she procured the title to the land in controversy from the plaintiff in good faith and for a valuable consideration. The action was tried before the court without a

jury, and the court made special findings of fact and conclusions of law, and rendered judgment thereon in favor of the plaintiff and against the defendant, and the defendant, as plaintiff in error, now seeks a reversal of such judgment.

The plaintiff in error, defendant below, claims that no cause of action was either alleged or proved against her in the court below. On the trial of the case in the court below, she objected to the introduction of any evidence under the petition, on the ground that the petition did not state facts sufficient to constitute a cause of action; and after the plaintiff had introduced all his evidence and rested, she demurred to the evidence upon the ground that the evidence did not prove any cause of action; and after all the evidence was introduced, and after the court had made its findings of fact and conclusions of law, and rendered its judgment, the defendant moved to set aside the same and for a new trial, upon the ground that the findings, decision and judgment were not sustained by sufficient evidence, and were contrary to law. The plaintiff in error, defendant below, also raises some other questions in this court, all of which we shall consider in their order.

We think the petition of the plaintiff below states facts sufficient to constitute a cause of action. We have already given the substance of the petition, but the facts are stated therein in much greater detail, and more elaborately than we have given them, and there are also other facts stated therein which we have not given. Judge Story says:

"Where the party intentionally or by design misrepresents a material fact, or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him, in every such case there is a positive fraud in the truest sense of the terms. There is an evil act with an evil intent; *dolum malum ad circumveniendum*. And the misrepresentation may be as well by deeds or acts, as by words; by artifices to mislead, as well as by positive assertions." (1 Story's Eq. Jur., §192.)

Mr. Perry says:

"Whenever by misrepresentation, combination, conspiracy, oppression, intimidation, surprise, or any other practice at va-

riance with honest, fair dealing, one is deceived, entrapped or surprised into a conveyance of the legal title to his property, courts of equity will not allow the fraudulent grantee to avail himself of the transaction to enjoy the beneficial interest, but will construe him to be a trustee, and will order him to account upon equitable principles, and to make a reconveyance of the property." (1 Perry on Trusts, § 171.)

But the specific objection made to the petition by the plaintiff in error, defendant below, is that it shows that the plaintiff below executed the deed with the understanding that the defendant was afterward to transfer the title to Fannie C. Shoe. It is claimed that if the property was transferred to the defendant, in trust for Fannie C. Shoe, the plaintiff can have no further interest in the property, and therefore that he cannot maintain an action with reference thereto. We think, however, that the understanding of the parties that the defendant was to convey the property to Fannie C. Shoe can make no difference. If the plaintiff was induced to part with his property through the fraud of the defendant, by false promises, elusive hopes, and deluding expectations, held out by her to him, that his condition, financial, social, and otherwise, would be bettered and improved thereby, it makes but little difference whether it was understood by the parties that the property should ever be reconveyed to him, or not. The fraud vitiates the whole transaction, and the parties should be placed back as near to their original condition as possible.

The principal objection to the plaintiff's evidence, is that it showed that during a large portion of the time while the plaintiff and the defendant were negotiating with each other with respect to the land, the marriage, etc., the plaintiff was a married man, and therefore all their arrangements or understandings with regard to marriage, or founded thereon, were illegal and void. And it is further claimed that no competent evidence was introduced tending to show that the plaintiff was ever divorced. Now these questions were not raised by the pleadings; and there is nothing in the record indicating that these exact questions were raised at any time in the court be-

low. In all probability they were not raised in that court before the judgment was rendered, even if they were then raised; for the entire defense upon which the defendant relied was that she was a *bona fide* purchaser of the property; hence these questions must now be looked upon with great disfavor.

It is true that at the time when the plaintiff and the defendant commenced negotiations with each other the plaintiff was a married man; but this appeared for the first time upon the trial, and only by the evidence; and it also appeared by the evidence that prior to the conclusion of their negotiations the plaintiff had obtained a divorce. His divorce was granted on August 2, 1882, while the deed to the property was not executed until August 14, 1882; but it is claimed that the evidence showing that the plaintiff had obtained a divorce was incompetent — that it was merely parol testimony. This is also true; but there was no objection to the introduction of such testimony. The case was apparently tried upon the theory that the divorce of the plaintiff was an admitted fact. The plaintiff testified to it orally, without objection; the defendant testified to it orally, without objection; her daughter, Mrs. Abrams, testified to it orally, without objection; and the witness Burnett, and perhaps still other witnesses, testified to it orally, without objection. It really seems to have been an admitted fact in the case.

It is said in the brief of the plaintiff below, defendant in error, that the divorce had been granted by the same court that tried this case; and this, perhaps, furnishes the explanation why no contest was made with reference thereto. If any objection had been made to such parol evidence, the records of the divorce case could easily and immediately have been produced. We think the objection to the evidence with regard to the divorce comes too late. It should have been made when the evidence was offered to be introduced. As the divorce was granted twelve days before the deed was executed, and as the deed was executed for the reasons and considerations set forth in the plaintiff's petition, it was not executed for such an illegal or wrongful consideration as will preclude

26—33 KAS.

the plaintiff from obtaining the relief which he now seeks. At the time when the plaintiff executed the deed he had a right to contract with reference to a future marriage. It was not then illegal, or immoral, or against public policy, for him to do so. Hence, no good reason can now be given why the relief asked for by the plaintiff should not be granted. He is not attempting to enforce an illegal contract. Indeed, he is not attempting to enforce any contract. He is not attempting to enforce any illegal or immoral transaction; and, indeed, he is not attempting to enforce any transaction. His desire is not to enforce something, but it is to undo and repudiate something that has already been done. He wishes to undo and repudiate all that was done between himself and the defendant with regard to the land.

But it is claimed that he cannot maintain a suit in equity to undo this transaction, because the same is and was illegal, *contra bonos mores*, within the maxim *Ex turpi causa non oritur actio;* and that he himself was a *particeps criminis* and *in pari delicto.* This is not correct; for, as we have before stated, at the time when the deed was executed the plaintiff and the defendant had the right to contract with reference to marriage. The entire transaction might then have been innocent, and in harmony with law, with public policy, and good morals. The defendant acted fraudulently; but the plaintiff, having no knowledge of her fraudulent intentions, was, in legal contemplation, innocent. It may be true that he acted foolishly; that he violated some of the rules of propriety, and that his actions were not the most commendable; but, in legal contemplation, he acted innocently, and was simply the innocent victim of a villainous fraud, deliberately planned and artfully executed by the defendant. For the purposes of this case, we shall consider that all the transactions had between the plaintiff and the defendant, prior to the time when the plaintiff obtained a divorce, were in violation of good morals and public policy, and were therefore void; but these transactions will not defeat the plaintiff's right to recover, for he has no need of any aid from them in the prosecution of his action. After the divorce

was granted, and upon the theory of the nullity of all the prior transactions, both parties were then free. Each had the power to contract for the future marriage, and neither was bound to marry the other. Each was at liberty to repudiate all that had previously been done, and each was at liberty to enter into new negotiations. The only transactions, then, which we need now to consider, are those had after the divorce was granted; and these are sufficient for the plaintiff to found his cause of action upon.

It is said in the brief of counsel for plaintiff in error, de-fendant below, that "the test whether a demand connected with an illegal transaction is capable of being enforced by law, is whether the plaintiff requires the aid of the illegal transaction to establish his case;" and the case of *Holt v. Green*, 73 Pa. St. 198, and same case, 13 Am. Rep. 737, is cited as authority. This we think is a correct statement of the law on the subject; but the plaintiff in this case does not require the aid of any illegal or immoral transaction to establish his case. The foundation for his case need not go further back than to the time when he procured his divorce. Also in this connection, see the case of *Stout v. Ennis*, 28 Kas. 706. While inadequacy of price is never alone sufficient to establish fraud, yet it may often be shown along with other evidence as tending to show fraud.

Where the question as to whether a money consideration was paid for a deed, or not, is presented for consideration to the trial court, the business transactions and financial condition of the parties about the time when the deed was executed, and when it is claimed the consideration was paid, may sometimes be shown as tending to show whether it was probable that a money consideration for the deed was paid, or not. There are still other reasons, however, in this case, rendering such evidence competent. We think there was sufficient evidence to sustain all the material findings of the court below. Taking the testimony of the plaintiff alone, there is but little room to question the correctness of the findings, and there was but little evidence tending to impeach his testimony, except that

of the defendant; and, taking into consideration the improbability of much that she said, and her bad reputation for truth and veracity, the court was justified in excluding all her testimony.

Finding no material error in the rulings and judgment of the court below, the judgment will be affirmed.

All the Justices concurring.