THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general, etc., Appellant,* v. J. N. WHITE, *Appellee.*

No. 16,606.

THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general, etc., Appellant,* v. ISAAC G. EYMAN, *Appellee.*

No. 16,607.

THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general, etc., Appellant,* v. LAWRENCE G. EYMAN, *Appellee.*

No. 16,608.

SYLLABUS BY THE COURT.

SCHOOL LAND — *Appraisement — Fraudulent Undervaluation — Proof.* In an action by the state to set aside the appraisement of school land and to cancel certificates of purchase issued thereon it appears that land, which the evidence tends to show was worth from $5 to $10 per acre, was appraised at $1.50 per acre, but that this was done through an honest exercise of judgment by appraisers fairly chosen, and no fraud is shown, unless inferable from the undervaluation so made. It is *held,* that the evidence is insufficient to sustain the charge of fraudulent undervaluation.

Appeals from Kearny district court; WILLIAM H. THOMPSON, judge. Opinion filed June 11, 1910. Affirmed.

*Fred S. Jackson,* attorney-general, *John Marshall,* assistant attorney-general, and *Charles D. Shukers,* special assistant attorney-general, for the appellant; *John S. Dawson,* of counsel.

*A. M. Harvey, E. R. Thorpe,* and *Albert Hoskinson,* for the appellees.

The opinion of the court was delivered by

BENSON, J.: These cases were all tried upon the same evidence, although different tracts of land are involved.

The attorney-general sued to set aside appraisements of school land because of an alleged fraudulent undervaluation, and asked for cancellation of the certificates of purchase issued to the defendants, based upon such appraisements. All the land was appraised at $1.50 per acre. In the petitions it was alleged that the land was reasonably worth from $5 to $10 per acre, and that the appraisers "negligently, willfully and without any consideration whatsoever of the true and reasonable value of the said plaintiff's land, and without examination of said land or any investigation as to the prevailing value of land of like character in that locality, appraised the said tract . . . [at] $1.50 per acre, when in truth and in fact said land was worth from $5 per acre to $10 per acre, or more, which said appraisers . . . well knew or might have known by the simplest inquiry." It was alleged that this "wanton disregard" of duty "operated to defraud" the state. It was also alleged that the defendants knew that the appraisement was not the true value of the land, and that they consulted and conspired with the county superintendent to have such appraisers appointed and confirmed, hoping and believing that they

would appraise the land negligently and partially in the defendants' behalf and against the interest of the state, and that the defendants aided and connived therein. It was further charged that the county commissioners, unmindful of their duty, confirmed the appointment of the appraisers without considering their interest or lack of interest or their competency.

On the trial the county superintendent testified that she made no particular investigation of the competency of the appraisers, but had known them all her life and considered them fair and disinterested; that one was a farmer, one a butcher, and one a blacksmith; that no one suggested their appointment, which was made upon her own judgment. She also testified that she expected that the land would be appraised higher than it was, because other land near by and in different parts of the county had been sold at a higher price; and that its value depended on the use to be made of it. The three county commissioners testified that they believed the appraisers to be good men and well qualified for the duty. The appraisers also testified that the land in their judgment was worth only $1.50 per acre, although one of them said he thought it might be. worth a little more; that they acted in good faith and made their appraisal upon a personal examination of the land. The defendants testified that the appraisal was the fair value of the land. These witnesses, or most of them, on cross-examination stated in substance that their testimony was based upon the usable value, which they distinguished from the speculative value, and that if the land was to be used for grazing or cultivation it would not be worth more than the appraised value. Several other witnesses living in the vicinity testified that the value of the land in question was from $5 to $10 per acre. The rental value of the land for grazing purposes was shown to be $6.25 for a quarter section. It is situated in Kearny county, near Lakin, and other land near by of the same

character had been assessed for taxation at from $480 to $540 per quarter section. The chairman of the board of county commissioners is a brother-in-law of the county superintendent, and another county commissioner is a brother of one of the defendants. The court sustained a demurrer to the evidence summarized above, and the state appeals.

The statute under which the appraisement was made provides for the appointment of "three disinterested householders, residing in the county in which said land is situated, who, being first duly sworn by an officer authorized to administer oaths to faithfully perform their duties, shall appraise each legal subdivision of said land separately at its real value, and return their appraisement in writing, signed by them, to the clerk of the county." (Laws 1901, ch. 350, § 1; Gen. Stat. 1901, § 6339.)

It is insisted that the appraisal was made in violation of the oath of the appraisers; that there was no effort to ascertain the true value; that the valuation made was only about one-fourth of the true value; and that this is so unconscionable as to indicate fraud. It is argued that such inadequacy shocks the moral sense of fair-minded men, and proves official misconduct. It is also said that it has been the usual custom to appraise school land at from $1.25 to $1.50 per acre, while land in the vicinity was selling at $5 to $10 per acre, or more, and an appeal is made to the court to declare that such proceedings are fraudulent and will be set aside.

It will be observed that there was no evidence of any connivance or conspiracy between the officers and the appraisers or with the defendants, or fraudulent practices of any kind to cause an undervaluation. The only evidence in support of the alleged official misconduct or fraud in the appraisement is the testimony that the appraisement was greatly below the market value of the land. Where an appraisement is the result of a

fair exercise of judgment and an honest expression of opinion it will not be set aside merely because other persons of equal honesty differ in their estimates of value. This court has said that while inadequacy of price is never alone sufficient to establish fraud, yet it may often be shown along with the other evidence as tending to show fraud. (*Douthitt v. Applegate,* 33 Kan. 395.) The same principle was applied in the case of a sheriff's sale, although it was said that great inadequacy of price is a circumstance to be regarded with suspicion, and slight additional circumstances only are required to authorize setting aside the sale. (*Means v. Rosevear,* 42 Kan. 377.) In this case no additional circumstances tending to show fraud are shown.

The fact of inadequacy of price rests upon conflicting evidence. On a demurrer to the evidence, however, the court can only determine whether there is any evidence fairly tending to prove every essential fact necessary to a recovery. (*Gifford v. Griffin,* 63 Kan. 716.) Therefore, in reviewing the ruling complained of, such inadequacy is considered as an established fact, but this alone, as held in the decisions cited, is insufficient to show fraud. The court is deeply sensible of the importance of preserving the school land from fraudulent misappropriation, and vigilant efforts to prevent it are to be commended, but the court can not go beyond the record to find facts not shown by the evidence.

The defendants contend that the action can not be maintained because an adequate remedy is given by appeal from the probate court, and that, unless appealed from, the finding of that court is conclusive. (Laws 1876, ch. 122, art. 14, §§ 5, 6; Gen. Stat. 1901, §§ 6345, 6346.) On the other hand, it is alleged and shown that the county superintendent refused to take the necessary steps for such appeal, although requested

by the proper authority. Questions of importance are thus presented which in the light of the conclusion reached are not considered.

The judgment is affirmed.